**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION**

| | |
|---|---|
| **LARRY PRESSON,**<br>individually, and as spouse of<br>and next friend for<br>**MARILYN PRESSON,**<br><br>     Plaintiff,<br><br>     v.<br><br>**MICHAEL D. HAGA,**<br>**INDIAN CREEK BUILDERS, INC.,**<br>**INDIAN CREEK INVESTMENTS, INC.,**<br>**WILLIAM B. GRESHAM,**<br>**RALPH L. INNES, and CHAS. C. MEEK**<br>**LUMBER COMPANY OF POPLAR BLUFF,**<br><br>     Defendants. | **Complaint for a Civil Case**<br>**No Jury Demand**<br><br><br>Docket No. |

**COMPLAINT FOR DECLARATORY JUDGMENT, BREACH OF CONTRACT, BREACH OF WARRANTY, RESCISSION, FRAUDULENT MISREPRESENTATION, NEGLIGENCE, VIOLATION OF THE MISSOURI MERCHANDISING PRACTICES ACT, AND VIOLATION OF THE FAIR DEBT COLLECTION PRACTICES ACT**

Plaintiff, Larry Presson ("Mr. Presson"), individually and as spouse of and next friend for Marilyn Presson ("Mrs. Presson"), by and through counsel, files this Complaint against Defendants, Michael D. Haga ("Haga"), Indian Creek Builders, Inc. ("ICB"), Indian Creek Investments, Inc. ("ICI"), William B. Gresham ("Gresham"), Ralph L. Innes ("Innes"), and Chas. C. Meek Lumber Company of Poplar Bluff ("Meek Lumber") for declaratory judgment, breach of contract, breach of warranty, rescission, fraudulent misrepresentation, negligence, violation of the Missouri Merchandising Practices Act,

1

and violation of the Fair Debt Collections Practices Act. In support thereof, Mr. Presson states as follows:

## I. PARTIES

1. Plaintiff Larry Presson is an adult resident citizen of the State of Tennessee. His wife, Marilyn Presson, is an adult resident citizen of the State of Tennessee. Their primary residence is located in Millington, Tennessee.

2. Defendant Michael D. Haga is an adult resident citizen of the State of Missouri, and upon information and belief, resides at 740 S. Westwood Blvd., Poplar Bluff, Missouri 63901.

3. Defendant Indian Creek Builders, Inc., upon information and belief, is a Missouri corporation with its principal place of business located at 740 S. Westwood Blvd., Poplar Bluff, Missouri 63901. Its registered agent for service of process is William B. Gresham, 2558 Brownwood Court, Poplar Bluff, Missouri 63901.

4. Defendant Indian Creek Investments, Inc. upon information and belief, is a Missouri corporation with its principal place of business located at 740 S. Westwood Blvd., Poplar Bluff, Missouri 63901. Its registered agent for service of process is William B. Gresham, 2558 Brownwood Court, Poplar Bluff, Missouri 63901.

5. Defendant William B. Gresham is an attorney residing in and practicing in the State of Missouri. His office address is 2558 Brownwood Court, Poplar Bluff, Missouri 63901.

6. Defendant Ralph L. Innes is an attorney residing in and practicing in the State of Missouri. His office address is 201 N Main Street, Ste. A, Poplar Bluff, Missouri 63901.

7. Defendant Chas. C. Meek Lumber Company of Poplar Bluff, upon information

and belief, is a Missouri corporation with a place of business located at 3501 N. Westwood Blvd., Poplar Bluff, Missouri 63901. It may be served by serving any managing agent.

## II. JURISDICTION AND VENUE

8. This Honorable Court has jurisdiction of the parties and the subject matter involved herein pursuant to, *inter alia*, 28 U.S.C. § 1332, as this action is between citizens of different States, there is complete diversity of citizenship between Plaintiff and Defendants, and the amount in controversy, exclusive of interest and costs, exceeds seventy-five thousand dollars ($75,000.00).

9. This Honorable Court also has jurisdiction of the parties and the subject matter involved herein pursuant to, *inter alia*, 28 U.S.C. § 1331, as this matter is a civil action arising under the constitution, laws or treaties of the United States. This action involves violations of the Fair Debt Collections Practices Act, 15 USC §1692 ("FDCPA").

10. Venue is proper under 28 U.S.C. § 1391(b)(1) and (2) since all Defendants reside in or do business within this District, and acts giving rise to the claims in this Complaint substantially occurred within this District.

## III. FACTS

11. As set forth in a separately filed motion herein requesting that the Court appoint Mr. Presson as Mrs. Presson's Next Friend for all purposes regarding this matter, Mr. and Mrs. Presson have been married to each since 1972. In 2010, one of Mrs. Presson's treating physicians diagnosed her with Alzheimer's Disease. Since that time, Mrs. Presson is not competent to make decisions on her behalf. Further, Mr. Presson has not only been her husband, but also her caretaker, provider and is her Attorney in Fact.

12. On or about May 5, 2017, Mr. Presson and ICB entered into a contract ("the Contract") to construct a new residence located at 201 Benelli Lane, Poplar Bluff, Butler County, Missouri ("the Project" or "the Dwelling"). A true and correct copy of the Contract is attached hereto and incorporated herein as **EXHIBIT A**.

13. Construction began on the Dwelling about two weeks prior to the execution of the Contract which was executed on May 23, 2017. At that time, the foundation had already been poured, and other work had already been performed.

14. Mr. Presson prepared the Contract. It was his intention that the contract would be executed by Haga on behalf of ICB without any substantive changes being made. At no time did Haga ever inform Mr. Presson that he had made any changes to the Contract at the time of its execution.[1]

15. Pursuant to the terms of the Contract, the Project was to be substantially completed by October 1, 2017. The Project was not substantially completed until at least December 22, 2017 when Mr. and Mrs. Presson first spent the night in the Dwelling.

16. The Contract sum to be paid to Haga and ICB was $330,000.00.

17. Since the beginning of construction, Haga, ICB, and ICI ("the construction Defendants") defectively performed almost every aspect of the Project.

18. The walls of the Dwelling were constructed with a construction system known as Insulated Concrete Forms ("ICF"). ICF utilizes interlocking, hollow Styrofoam blocks which are stacked and then filled with concrete.

19. The construction Defendants defectively built the ICF walls as follows:

   a.   failed to use properly trained workers to build the ICF walls, (the first foreman on the Project was a drywall installer, and Haga hired unskilled young boys

---

[1] Later Haga informed Mr. Presson that the contract meant nothing.

4

from out of state, housed them in a "bunkhouse" at his farm, and charged them rent, treating them like indentured servants);

      b.      failed to properly supervise the workers;

      c.      failed to properly brace the ICF walls before filling them with concrete so that they would be plumb, straight, square and level, (the walls failed to meet each one of these required construction standards);

      d.      filled the ICF blocks with concrete too quickly which caused the walls to be out of plumb, not straight, not square and not level.

20. The foregoing negligent acts resulted in seriously misaligned walls on the Project which are not plumb, not straight, square or level.

21. For example, one wall, approximately twenty-five feet in length is ten and one-half inches out of alignment.

22. The roof system on the project was constructed on the defective walls which caused the roof to be misaligned and out of square as well which weakens the roof, shortens its longevity, and its ability to prevent leaking.

23. The defectively installed walls and roof system significantly diminish the value of the Dwelling, and significantly hinders Plaintiff's ability to resell the Dwelling since Plaintiff is obligated to disclose such defects, which will deter most, if not all, potential buyers.

24. The construction Defendants fraudulently misrepresented to Plaintiff that they were competent, skilled and qualified to properly construct and install the ICF walls and roof system.

25. After the construction Defendants stopped work on the Project, Plaintiff learned

5

that Haga and ICB were subcontractors on the construction of a Drury Inn hotel located at 3303 Campster Drive, Cape Girardeau, Missouri. The construction Defendants were to construct ICF walls on the structure. They performed such defective construction that they were terminated from the job. Thus, the construction Defendants knew they did not have the ability to properly and skillfully perform work on the Project, and fraudulently misrepresented same to Plaintiff.

26. In addition to the previously described defects, the construction Defendants caused and committed the following additional defective construction:

    a. the roof wood truss system was defectively installed and is out of alignment, has noticeably large low areas, and bowed areas, on the roof which weaken it;

    b. failure to include in the price of the Contract, (pursuant to the terms of the Contract), two forty gallon hot water heaters (and failed to put drain pans underneath any water heaters in the Dwelling);

    c. all drywall inside the Dwelling has been defectively installed since the construction Defendants failed to properly mud, sand, and prime the walls resulting in substandard work with noticeable tape joints, rough areas and streaks;

    d. the lot was not properly graded or filled with a sufficient amount of dirt which causes rain water to seep into the walls of the Dwelling which will eventually cause further damage to the Dwelling;

    e. the stone work at the first three feet on the exterior of the Dwelling, and surrounding the front entry area and chimney, is defectively installed since the construction Defendants directed the stone mason contractor to use inferior quality stone and refused to allow the mason to install sills at the top of the stone work to prevent

6

leaking;

      f.    failed to properly install expensive Hardy brand siding by failing to match factory cuts, installing some siding upside down, failure to use finishing nails to install the siding which unnecessarily damaged the siding, all of which voided the factory warranty of the siding, the sole reason Plaintiff purchased the more expensive siding;

      g.    failed to install electrical outlets on the inside of the Dwelling's exterior walls; and

      h.    numerous other miscellaneous defects such as failure to insulate the garage, cracking driveway and failure to install deadbolts as specified pursuant to the Contract.

27. Haga failed and refused to remit payment to subcontractors, laborers and material suppliers on the Project in violation of the terms of the Contract, and in an act to defraud Plaintiff.

28. Specifically, Haga failed and refused to remit payment to Tom Mosely d/b/a Mosley Plumbing, a subcontractor on the Project, at least in the amount of $5,150.00 in a purposeful act designed to defraud Plaintiff. Plaintiff received a collection letter dated March 6, 2018 from an attorney, Ralph L. Innes, representing Mosely Plumbing regarding the unpaid balance. A true and correct copy of which is attached hereto and incorporated herein as **EXHIBIT B**.

29. Haga failed and refused to remit payment to Chas. C. Meek Lumber Company of Poplar Bluff, a material provider on the Project, at least in the amount of $10,219.30 in a purposeful act designed to defraud Plaintiff. Plaintiff received a collection letter dated March 15, 2018 from an attorney representing Chas. C. Meek Lumber Company of

Poplar Bluff regarding the unpaid balance.  A true and correct copy of which is attached hereto and incorporated herein as **EXHIBIT C**.

30.  On or about April 5, 2018, an attorney representing Chas. C. Meek Lumber Company of Poplar Bluff sent to Plaintiff a Notice of Claim of Mechanic's Lien arising from Haga's failure and refusal to remit payment.  A true and correct copy of which is attached hereto and incorporated herein as **EXHIBIT D**.

31. Additionally, Haga fraudulently represented to Plaintiff that he had paid Tanner Masonry, a subcontractor on the Project.  Haga did not remit payment to Tanner Masonry pursuant to the terms of the Contract.  Plaintiff remitted payment to Tanner Masonry in the amount of $9,510.00.  Thus, Haga fraudulently double-charged Plaintiff for the stone work at the Project.

32.  Haga failed and refused to pay other subcontractors and material providers on the Project as well.

33.  Plaintiff not only remitted all amounts owed to the construction Defendants, Plaintiff overpaid the construction Defendants, by, in part, paying some of the subcontractors out of his own pocket.

34. Haga and ICB failed to comply with Mo. Rev. Stat. § 436.353(1) by failing to provide Plaintiff, upon entering into the Contract, the required written notice of contractor's right to offer to cure construction defects before a claimant may commence action against the contractor.

35.  Therefore, pursuant to Mo. Rev. Stat. § 436.353(3), Plaintiff is not required to comply with Mo. Rev. Stat. §§ 436.350 to 436.365.

36.  Haga and ICB are in breach of contract by failing to provide a product

8

constructed in a good and workmanlike manner in keeping with the standard of work and practice required from a contractor working on a similar project.

37. Haga and ICB are in breach of contract by failing to meet and maintain the requirement to use the degree of skill, efficiency and knowledge possessed by those working in the construction business.

38. Haga and ICB are in breach of the warranty set forth in the Contract, and all implied warranties and warranties set forth in the law, by failing and refusing to remedy and rectify all defects set forth herein, demand having been made for compliance with same.

39. Haga and ICB are in breach of contract since they failed to provide any receipts or Certificates of Payment to laborers and material providers for the Project as required by the Contract.

40. Upon information and belief, Haga deposited funds from Plaintiff into ICI bank accounts in an effort to defraud creditors. ICI wrongly benefitted from Plaintiff's payments and wrongfully holds amounts owed to Plaintiff. ICI is thus financially liable for all damages caused by Haga and ICB.

41. Defendant William B. Gresham ("Gresham") violated the Fair Debt Collections Practices Act, 15 USC §1692 ("FDCPA") when he failed to comply with its requirements and failed to include the required notices and disclosures in his collection letter to Plaintiff dated March 5, 2018. A true and correct copy of which is attached hereto and incorporated herein as **EXHIBIT E**. Gresham further violated the FDCPA when he failed, upon written request by Plaintiff, to provide documentary evidence of the alleged debt owed by Plaintiff to Haga and ICB. Thus, pursuant to the FDCPA, Gresham is

9

liable to Plaintiff for statutory damages and attorney fees.

42. Defendant Ralph L. Innes ("Innes") violated the Fair Debt Collections Practices Act, 15 USC §1692 ("FDCPA") when he failed to comply with its requirements and failed to include the required notices and disclosures in his collection letter to Plaintiff dated March 6, 2018 and referenced above as Exhibit B.  Innes further violated the FDCPA when he failed, upon written request by Plaintiff, to provide documentary evidence of the alleged debt owed by Plaintiff to Tom Mosely d/b/a Mosley Plumbing. Thus, pursuant to the FDCPA, Innes is liable to Plaintiff for statutory damages and attorney fees.

43. As set forth above, Chas. C. Meek Lumber Company of Poplar Bluff, a material provider for the Project, has alleged that it is owed at least $10,219.30 and has filed a Notice of Claim of Mechanic's Lien regarding the Project which encumbers Plaintiff's realty.

44. Chas. C. Meek Lumber Company of Poplar Bluff is a necessary party to this action regarding amounts owed and Haga and ICB's liability for same.

## IV. CAUSES OF ACTION

### Count I
### *Declaratory Judgment as to all Defendants*

45. Plaintiff reasserts and incorporates by reference the allegations set forth in Paragraphs 1 through 44 as though fully set forth herein.

46. Pursuant to Fed. R. Civ. P. 57, Plaintiff requests this Honorable Court to declare the parties' rights, duties, obligations and responsibilities as set forth in the Contract.

## Count II
### *Breach of Contract and Breach of Warranty as to Defendants Haga and ICB*

47. Plaintiff reasserts and incorporates by reference the allegations set forth in Paragraphs 1 through 46 as though fully set forth herein.

48. Haga and ICB and Plaintiff entered into a valid contract that sets forth certain duties and warranties which they had a duty to perform pursuant to the terms of the Contract and the implied terms of a contract, including implied warranties.

49. Haga and ICB breached the Contract as primarily described in Paragraphs 19 and 26, and, and breached the duties to perform services which would be free from defects in workmanship or materials, and by failing and/or refusing to remedy and rectify all defects set forth herein, which is a breach of the contractual warranties, and all implied warranties, demand having been made for compliance with same.

50. As set forth herein, Plaintiff has been damaged by Haga and ICB and are thus liable for all damages incurred by Plaintiff, including attorney fees.

## Count III
### *Rescission of Contract as to Defendants Haga and ICB*

51. Plaintiff reasserts and incorporates by reference the allegations set forth in Paragraphs 1 through 50 as though fully set forth herein.

52. Plaintiff was deceived into entering into the Contract. As set forth herein, Haga and ICB fraudulently misrepresented that they were able to, and would, construct the Dwelling in a good and workmanlike manner in keeping with the standard of work and practice required from a contractor working on a similar project.

53. Based upon Haga and ICB's fraudulent misrepresentation, Plaintiff declares the contract void from its inception, and hereby offers return of the Dwelling to Haga and

ICB, and a judgment for all damages caused by Haga and ICB, including all funds paid toward construction of the residence, the purchase cost of the real estate lot, and all costs required to put Plaintiff back in the position he was in prior to entering into the Contract.

### Count IV
*Fraudulent Misrepresentation as to Defendants Haga and ICB*

54. Plaintiff reasserts and incorporates by reference the allegations set forth in Paragraphs 1 through 53 as though fully set forth herein.

55. Pursuant to the requirements set forth in *Schauer v. Gundaker Movits Real Estate Co.*, 813 S.W.2d 112 (Mo. App. 1991), Haga and ICB falsely represented to Plaintiff that:

    a) they were able to, and would, construct the Dwelling in a good and workmanlike manner in keeping with the standard of work and practice required from a contractor working on a similar project;

    b) they would provide, in a timely fashion, all receipts and Certificates of Payment to laborers and material providers for the Project as required by the Contract;

    c) they would remedy and rectify all defects to the Dwelling as set forth herein;

    d) they would pay all laborers and material providers on the Project, and failed to pay at least:

    Meek Lumber ($10,219.30)

    Mosely Plumbing ($5,150.00)

    Gamblin Lumber ($9,000.00)

    Cornell Trucking (dirt work) ($10,000.00)

        Eubanks Electric Company ($4,465.00)

        Tanner Masonry ($9,700.00);

    e)  Haga fraudulently misrepresented to Plaintiff that he paid the stone mason which caused Plaintiff to be double-billed by Haga and ICB;

    f)  Haga and ICB fraudulently charged more than which they had contractually agreed; and

    g)  all other false representations set forth herein, particularly at Paragraphs 24 and 25.

56. All representations made by Haga and ICB to Plaintiff as described above were false as set forth primarily in Paragraphs 19, 24, 25 and 26.  Plaintiff has since hired an expert witness who concludes said representations were false, as do at least one foreman and one subcontractor who worked on the Project.  Further, these workers have since informed Plaintiff that Haga refused to allow workers on the Project to fix defective construction, and to hide the defects instead.

57. All representations made by Haga and ICB were, at all times relevant, material since the fraudulent representations and fraudulent acts of defectively constructing the Dwelling caused significant damage to Plaintiff.

58. All representations made by Haga and ICB, as set forth primarily in Paragraphs 19, 24, 25 and 26, were made by Haga with knowledge of their falsity.

59. Haga and ICB intended that their representations should be acted upon by Plaintiff and in a manner reasonably contemplated since Haga and ICB continually induced Plaintiff to continue to make payment draws pursuant to the term of the Contract.

60. Plaintiff was ignorant of the falsity of the representations which is evidenced by Plaintiff's continued reliance on the representations to his detriment, at least in part, by continuing to make payments during the process of defective construction, and paying for the defectively constructed Dwelling.

61. Plaintiff relied on the truth of the representations made by Haga and ICB which is evidenced by Plaintiff's continued reliance on the representations to his detriment, at least in part, by continuing to make payments during the process of defective construction, and paying for a defectively constructed Dwelling.

62. Plaintiff had a right to rely Haga and ICB's representations since Haga held himself out to the general public, and to Plaintiff, as a competent licensed contractor, particularly utilizing the ICF construction process.

63. Haga and ICB's fraudulent misrepresentations consequently and proximately caused injury to Plaintiff as set forth primarily in Paragraphs 19 and 26.

### Count V
### *Breach of Implied Covenant of Good Faith and Fair Dealing as to Defendants Haga and ICB*

64. Plaintiff reasserts and incorporates by reference the allegations set forth in Paragraphs 1 through 62 as though fully set forth herein.

65. Missouri law implies a covenant of good faith and fair dealing in its performance or enforcement in every contract, including the Contract entered into between Haga, ICB and Plaintiff.

66. Haga and ICB breached the covenant of good faith and fair dealing by not intending to properly construct the Dwelling, by not properly constructing the building, and by failing to perform almost every aspect and term of the Contract.

67. As set forth herein, this breach caused Plaintiff monetary damage as a result.

## Count VI
### *Negligence as to Defendants Haga and ICB*

68. Plaintiff reasserts and incorporates by reference the allegations set forth in Paragraphs 1 through 67 as though fully set forth herein.

69. Haga and ICB negligently rendered construction services to Plaintiff, and failed to comply with the express and implied duties to perform the services rendered to Plaintiff in a skillful, careful, diligent, and workmanlike manner, and failed to comply with their duties to perform services which would be free from defects in workmanship or materials.

70. Plaintiff was harmed because of the negligence of these Defendants, and for which these Defendants are liable.

## Count VII
### *Violation of the Missouri Merchandising Practices Act as to Defendants Haga and ICB*

71. Plaintiff reasserts and incorporates by reference the allegations set forth in Paragraphs 1 through 70 as though fully set forth herein.

72. Plaintiff purchased merchandise/services from Haga and ICB as set forth in the Contract.

73. The services purchased by Plaintiff was for personal, family, or household purposes; namely, the construction of a residence.

74. Plaintiff suffered an ascertainable loss of money or property; as a result of acts committed by Haga and ICB declared to be unlawful under the Missouri Merchandising Practices Act; namely, deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of material facts in

15

connection with the construction of the Dwelling as specifically set forth herein, particularly at Paragraphs 19, 24, 25 and 26.

75. Defendants Haga and ICB are jointly and severally liable for all damages caused, including an award of attorney fees.

## Count VIII
### *Intracorporate Civil Conspiracy and to Pierce the Corporate Veils as to Defendants Haga, ICB and ICI*

76. Plaintiff reasserts and incorporates by reference the allegations set forth in Paragraphs 1 through 75 as though fully set forth herein.

77. Defendant Haga was acting outside the course and scope of his authority when he committed the tortious actions described herein.

78. Defendant acted to further his own personal purposes.

79. Defendant and ICB conspired and devised a scheme to defraud Plaintiff by misrepresenting that he could competently construct the Dwelling in violation of the Missouri Merchandising Practices Act ("MMPA"), defrauded Plaintiff by willfully failing to pay laborers and material providers for the construction of the Dwelling, defrauded Plaintiff by double-charging for services rendered, and purposely and negligently constructed the Dwelling to shortcut quality and costs for self-enrichment, all for their personal gain and profit, and all of which caused harm to Plaintiff.

80. The corporate veils of ICB and ICI should be pierced since, upon information and belief, Haga is treating both corporate entities as his alter ego and as his personal piggy banks, paying his personal expenses from the corporate bank accounts, and depositing checks made payable to Haga into the corporate bank accounts, among others invalid and unlawful acts and transactions.

81. Defendant Haga, ICB and ICI are thus liable for all damages incurred by Plaintiff, individually, and jointly and severally, including punitive damages and attorney fees.

### Count IX
### Violation Of The Fair Debt Collection Practices Act as to Defendants Gresham and Innes

82. Plaintiff reasserts and incorporates by reference the allegations set forth in Paragraphs 1 through 81 as though fully set forth herein.

83. Defendants Innes and Gresham violated the Fair Debt Collections Practices Act, 15 USC §1692 ("FDCPA") when they failed to comply with its requirements and failed to include the required notices and disclosures in their collection letters to Plaintiff attached hereto as Exhibit B and Exhibit E.

84. These Defendants are thus liable for all statutory damages and attorney fees as required by the FDCPA.

### PRAYER FOR RELIEF

**WHEREFORE, PREMISES CONSIDERED,** Plaintiff prays:

1. That Plaintiff be awarded compensatory damages in an amount to be proven at trial;

2. That Plaintiff be awarded punitive or treble damages in at least the amount of Five Hundred Thousand Dollars ($500,000.00) or in such amount as determined by the Court;

3. That this Honorable Court enter a declaratory judgment declaring the rights, duties and responsibilities of the parties pursuant to the terms of the Contract, particularly as to Plaintiff, Haga, ICB, ICI and Meek Lumber;

4. Alternatively, that the Contract be rescinded and Plaintiff, Haga, ICB and ICI be put back in the position thy were in prior to entering into the Contract;

5. That ICB's and ICI's corporate veils be pierced and Haga be found individually liable, and jointly and severally with ICB and ICI, based on his fraudulent misrepresentations and intracorporate civil conspiracy;

6. That a judgment be granted against Defendants Gresham and Innes for statutory damages and attorney fees as required by the FDCPA;

7. That Plaintiff be awarded his attorney fees, expert witness fees, process server fees, court reporter fees, and court costs;

8. That Plaintiff be entitled to such other damages and expenses as may be shown by Plaintiff at trial; and

9. Plaintiff further prays for such other relief, both general and specific, to which he may be entitled in the premises.

Respectfully submitted,

/s/ Jeffrey A. Land_____
JEFFREY A. LAND, Bar Number: 15835TN
Attorney for Plaintiff
Jeffrey A. Land & Associates
119 S. Main Street, Ste. 500
Memphis, Tennessee 38103
Phone: 901.322.8220
Fax: 901.328.5755
jeff@jefflandlaw.com